**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

SOUTHERN STAR CENTRAL GAS
PIPELINE, INC.,

    *Plaintiff*,

vs.

120 ACRES LOCATED IN RICE COUNTY,
KANSAS; LANCE D. FREDERICK;
LYNETTE K. FREDERICK, CONNIE JO
FREDERICK; LYONS FEDERAL
SAVINGS ASSOCIATION; AND
UNKNOWN OTHERS,

    *Defendant.*

Case No. 09-2435-EFM-GLR

**MEMORANDUM AND ORDER**

Plaintiff Southern Star Central Gas Pipeline, Inc. ("Southern Star") seeks to condemn subsurface rights under 120 acres located in Rice County for the use of natural gas storage ("the property"). The Fredericks ("the Landowners") own the property in question. The ultimate issue relates to the proper value of the subsurface and related rights. Southern Star's proposed expert, Bernie Shaner, values the rights at $16,500. The Landowners' proposed expert, William Henry, values the rights at $642,120.58. Both Southern Star and the Landowners filed motions in limine seeking to exclude the testimony of the other's expert. Due to the complex nature of the valuation issues, the parties requested a *Daubert* hearing on the motions. The matter came before the Court

for hearing on March 20th, 2012.

Because the Court finds that Mr. Henry's testimony is unreliable, the Court grants Southern Star's motion[1] to exclude his testimony. The Court finds that Mr. Shaner is qualified and his testimony is reliable, and therefore denies the Landowners' motion to exclude his testimony.[2]

## I.     The parties have a long history of dealing.

The property is located within the boundaries Alden Storage Field, which Southern Star operates under Certificates of Public Convenience and Necessity issued by the Federal Energy Regulation Commission ("FERC"). The Landowners purchased the property subject to Southern Star's natural gas storage rights on December 28th, 2001. The Landowners use the property for agricultural purposes, primarily farming. By their own admission, the Landowners value the property (in fee simple) at $3,000 per acre. Southern Star previously leased the natural gas storage rights from the Landowners; however, the parties were unable to negotiate a continuing lease and Southern Star has since sought to condemn an easement to the property's natural gas storage rights.[3] The case is now set for trial to determine the appropriate compensation for the taking, and each party hired an expert to opine on the value. The bulk of this Order will address each party's *Daubert* challenge to the opposing expert.

---

[1] Doc. 45.

[2] Doc. 48.

[3] Doc. 49, p. 6.

## II. The appropriate measure of compensation is that for a partial taking under K.S.A. § 26-513(c).

Before addressing the reports and qualifications of the respective experts, the Court finds it necessary to make a threshold determination regarding the applicable statute section for compensation. The Landowners argue in a motion in limine that Kan. Stat. Ann. § 26-513(b) should apply to determine compensation.[4] Section 26-513(b) states: "(b) *Taking entire tract.* If the entire tract of land or interest in such land is taken, the measure of compensation is the fair market value of the property or interest at the time of the taking." Southern Star, however, contends that K.S.A. § 26-513(c) should apply, which provides: "(c) *Partial taking.* If only a part of a tract of land or interests is taken, the compensation and measure of damages is the difference between the fair market value of the entire property or interest immediately before the taking, and the value of that portion of the tract of interest remaining immediately after the taking." "Fair market value" is defined in section 26-513(e) as "the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. The fair market value shall be determined by the use of the comparable sales, cost or capitalization of income appraisal methods or any combination of such methods."

In its amended complaint, Southern Star states that it seeks to acquire the following interests:

> a.    All of the undivided mineral interests, including but not limited to, all of the oil, gas, coal and other minerals in and under that may be produced or stored from or in sands and formations thereunder lying approximately two hundred (200) feet

---

[4] Docs. 48 and 77.

below the top of the Lansing-Kansas City to the top of the Viola (approximate depth 3150' - 3390') (collectively referred to hereinafter as, "the Storage Reservoir"); and

b.     The rights of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said lands for oil, gas, coal and other minerals, and for storing, handling, transporting and marketing the same therefrom with the right to remove from said land all of Southern Star's property and improvements at any time; and

c.     The 'exclusive' right, privilege, and easement to use the Storage Reservoir for the introduction, injection, and storage therein of natural gas and the removal and withdrawal of natural gas therefrom through wells now located on the Subject Property and/or through wells to be drilled thereon and/or through wells located in the vicinity therof, together will all rights incident to said introduction, injection, storage, withdrawal, and removal, including without limitation, the following:

    i.  The right to all storage gas in the Storage Reservoir and to retain possession, ownership, and title of natural gas so stored as personal property.

    ii.  The right to conduct exploratory and testing work and to drill, redrill, install, construct, operate, monitor, maintain, renew, repair, replace, produce, plug, replug, abandon and remove, from time to time, such existing wells and/or additional future storage wells, pipelines, gas transmission pipelines, casing, drips, valves, electric lines, telemetering or other communication lines, structures, and other related equipment, appliances, and appurtenances as Southern Star may deem desirable, utilizing the surface of the Subject Property to the extent necessary to accomplish such purposes. Southern Star's rights shall include the right to perform downhole work that may be required to maintain and all such wells in usable condition and the right to flow test any and all such wells.

    iii.  Southern Star shall have the permanent easements and rights of way, rights of ingress and egress, and the right to use existing roads, at all times for the purpose of operating and maintaining its gas storage field, including but not limited to the surveying, drilling, monitoring, producing, operating, testing, replacing, repairing, and plugging of existing wells, pipelines and appurtenances on the Subject Property and additional wells, pipelines and appurtenances that may be drilled or constructed on the Subject Property in the future.

    iv.  Southern Star shall have the right to unitize the Subject Property or any part thereof with other acreages in order to form a gas storage unit or a unit for the recovery of oil, natural gas, gas

liquids, gas condensate, and/or other hydrocarbons.[5]

Due to the seemingly exhaustive nature of this description, the Court inquired at the hearing as to how the above description does not qualify as an "entire taking" of the subsurface rights. Counsel for Southern Star clarified that the Landowners retained mineral interests and subsurface rights in the areas above and below the 200-foot section described in their Amended Complaint. Therefore, the Court finds that the taking sought by Southern Star constitutes a partial taking under K.S.A. § 26-513(c). The Court denies the Landowners' motions in limine requesting that the Court find that K.S.A. § 26-513(b) is the applicable statute.[6]

## III. An expert must be qualified, and his testimony must be reliable in order to be admissible.

Rule 702 of the Federal Rules of Evidence governs the admissibility of an expert opinion.[7] Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[8]

---

[5] Doc. 16, p. 4.

[6] Docs. 48 and 77.

[7] *Daubert v. Merrel Dow Pharm.*, 509 U.S. 579, 579 (1993).

[8] Fed. R. Evid. 702.

-5-

This Rule is not limited to scientific testimony, but also applies to "technical" or "other specialized" knowledge.[9]

Rule 702 creates a gate-keeping function that requires the trial judge to consider certain factors in determining the admissibility of evidence.[10] This analysis is a two-part inquiry, wherein the Court should consider (1) whether the expert is qualified, and (2) whether the testimony is reliable.[11] In order to be qualified, the expert should possess the "knowledge, skill, experience, training, or education" necessary to render an opinion on the subject.[12] An expert is qualified "[a]s long as an [he] stays 'within the reasonable confines of his subject area.' . . . '[A] lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight.' "[13] If the Court finds that the expert is qualified, it must then go on to find that his testimony is also reliable.[14] To do so, the Court should "assess the underlying reasoning and methodology."[15] A misstep in the expert's analysis renders his testimony inadmissible, whether it "completely changes a reliable methodology or merely misapplies that methodology."[16] Further, the Court should not

---

[9] *Kumho Tire, Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

[10] Alice B. Lustre, *Post-Daubert Standards for Admissibility of Scientific and Other Expert Evidence in State Courts,* 90 A.L.R.5th 453, 453 (2001).

[11] *United States v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009) (internal citations omitted).

[12] *Id.*

[13] *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (internal citation omitted).

[14] *Nacchio,* 555 F.3d 1234 at 1241.

[15] *Id.*

[16] *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999) (internal quotation omitted).

accept guesses or speculation of an expert as reliable.[17]

## IV. Although Mr. Henry is qualified to testify as an expert, the Court finds that his testimony is unreliable.

*a.     Mr. Henry is a qualified expert.*

Mr. Henry is an engineer and energy consultant on matters of natural gas storage. His current job description states that he "provides energy consulting services for midstream operations, management, storage, regululatory, and permit services."[18] Southern Star argues that he is not qualified to offer valuation testimony; however, the Court finds that his background in the energy industry provides sufficient qualifications. Although the Court finds that he is qualified to testify as an expert in such matters, the second inquiry regarding reliability precludes his proposed testimony here.

*b.     Mr. Henry's testimony is unreliable.*

In his report,[19] Mr. Henry claims that he employed an income-based approach to valuing the subsurface rights because of the lack of comparable data for determining fair market value. He used information such as existing gas storage leases, information gathered from conversations with personnel and companies involved in the operation of gas storage fields and new storage projects, and his experience in the development and operation of reservoir gas storage field. Based on his

---

[17] *Mooring Capital Fund, LLC v. Knight*, 388 Fed.Appx. 814, 820 (10th Cir. 2010) (quoting *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

[18] Doc. 46-6, p. 14.

[19] Doc. 46-6.

experience and review of storage leases, Mr. Henry stated that he believed the following standards were appropriate:

> 1. An up front [sic] bonus of two to three times the per acre rate; 2. Annual lease payments negotiated at the time the lease is signed with an annual escalation based on a Cost of Living Index or a specified percent of 4 – 10%; 3. Royalty payments on any original gas or liquids recovered during the operation of the storage field; 4. One time payments for pipeline ROW which vary according to pipeline size and location; 5. One time payments for temporary and permanent well sites; and 6. Payments for crop and land use during construction of facilities.[20]

He claims that he considered these, as well as the "value of the service provided by the storage field," which includes "the revenues generated for the Pipeline from the storage field"; "the capital invested in the storage field"; "the development cost of new storage fields of a similar nature"; and "the risk factors of leases in the development of new storage fields as compared to the renewal of leases in existing storage fields."[21]

Using the above information and three different methods,[22] Mr. Henry calculated a fair market value for the taking of $642,120.58. He calculated the value based on "the payment of an up front bonus in the first year and rental income of $150 per acre for 120 acres" for 50 years, with a 5% annual escalation every five years.[23] He then calculated the net present value by employing a 7% discount factor.

---

[20] *Id.* at p. 3.

[21] *Id.* at p. 5.

[22] Mr. Henry's self-described "method Number 2" employed a $0.05 per Mcf per acre amount. *Id.* at 4.

[23] *Id.* at p. 6.

The Court must exercise its gate-keeping function under *Daubert* and Rule 702[24] to exclude Mr. Henry's testimony based on its reliability.[25] Henry's testimony is not based on sufficient facts or data. For example, the Court finds no basis for Mr. Henry's $150 per acre lease estimate. The only basis for this figure appears to be taken from an Alaska lease, which is too remote to be relevant. The Court has similar concerns regarding the data (or lack thereof) employed to arrive at the $0.05 per Mcf factor, as well as the four or five percent income factor.

The Court also finds that Mr. Henry's testimony is not the product of reliable principles and methods. Mr. Henry's methods have not been tried or consistently applied in the community. Indeed, Mr. Henry admits that he has never before utilized his "methods Number 2 and 3," and is unable to offer any support for such valuation methods.[26]

Therefore, Mr. Henry's report will be excluded. Southern Star's motion in limine is granted.[27] Mr. Henry may still testify as to the foundation of leases and offers for leases previously made by Southern Star, which the Court considers appropriate evidence in this case. He may not, however, opine as to the value of the taking.

---

[24] Rule 702 of the Federal Rules of Evidence requires that the testimony is "based on sufficient facts or data" and is the "product of reliable principles and methods," and that the expert reliably apply the "principles and methods to the facts of the case."

[25] These concerns were addressed in detail at the March 20th, 2012 hearing. Therefore, they are only briefly discussed here.

[26] Doc. 46-4, p. 107-108.

[27] Doc. 45.

**V.     Mr. Shaner is qualified to testify as an expert in this case, and his testimony is reliable.**

*a.     Mr. Shaner is a qualified expert.*

Mr. Shaner is a real estate appraiser with nearly forty years of experience in the appraisal industry. He holds both SRA and MAI designations. The SRA designation is issued to those "who are experienced in the analysis and valuation of residential real property."[28] The MAI membership designation is issued to appraisers "who are experienced in the valuation and evaluation of commercial, industrial, residential and other types of properties."[29] Both designations are issued by the Appraisal Institute, which requires candidates for both designations to "[c]omplete rigorous education requirements, submit extensive specialized appraisal experience, demonstrate appraisal report writing abilities and potentially pass a comprehensive examination."[30] In addition to the education and experience required to attain these designations, Mr. Shaner also has experience that is directly relevant to his opinion here–he has performed valuation reports for numerous condemnations, some of which included the taking of subsurface rights for natural gas storage.

The Landowners argue that Mr. Shaner is not qualified to testify as an expert in this case. They argue that he does not have any experience, education, background, or training in valuing mineral interests. The Court finds that although he may not be a mineral interest expert, his training and education as a real estate appraiser, combined with his vast experience applying traditional

---

[28] *SRA,* Appraisal Institute, http://www.appraisalinstitute.org/designations/SRA_designations.aspx (last visited Mar. 20, 2012).

[29] *MAI*, Appraisal Institute, http://www.appraisalinstitute.org/designations/MAI_Designations.aspx (last visited Mar. 20, 2012).

[30] *Professional Designatio*ns, Appraisal Institute, http://www.appraisalinstitute.org/designations/Default.aspx (last visited Mar. 20, 2012).

appraisal methods, make him qualified to opine as to the value of the taking here.

*b.     Mr. Shaner's testimony is reliable.*

In creating his expert report,[31] Mr. Shaner employed a comparable sales approach to determine the value of the taking. He found that the highest and best use of the property to the Landowners was agricultural use. He analyzed data of nearby and relatively recent sales of similar agricultural land, both with and without subsurface rights. He then used this data to estimate the value of the land, in fee simple absolute, at $165,000 before the taking. He found that the value of the land after the taking was $148,500. Therefore, his report indicates that the value of the taking is the difference between these two values – $16,500.

The Court finds that Mr. Shaner's report is reliable. The data and statistics that he employed have a proper foundation and relationship to the property in question. The method that he employed is an accepted methodology in the appraisal business, and he reliably applied that method to the facts and data in this case.

What shortcomings might exist with regard to Mr. Shaner's testimony go to the weight that the jury should give his testimony, not to its admissibility under Rule 702.[32] Therefore, the Court denies the Landowners' motions to exclude the testimony of Mr. Shaner.[33]

## VI.     Other Non-*Daubert* Rulings

---

[31] Doc. 50-8.

[32] *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.); *see also Newman v. State Farm Fire & Cas. Co.*, 290 Fed.App'x 106, 114 (10th Cir. 2008) (noting that issues concerning an expert's opinion went to weight rather than admissibility).

[33] Docs. 48 and 77.

*a.     The "date of taking" will be the date of judgment in this case.*

Southern Star raised the of what constitutes the "date of taking."[34]  The Court finds that the "date of taking" will be the date of judgment in this case.

*b.     The "date of valuation" will be the first day of trial.*

Southern Star also raised the issue of what constitutes the "date of valuation."[35]  The Court finds that the "date of valuation" will be the first day of trial in this case.

*c.     The surface rights issues raised in Doc. 47 are moot.*

The parties agreed at the *Daubert* hearing on March 20th, 2012, that the definition of the taking was not at issue, and includes the surface rights incident to the use of the subsurface rights being taken.  Therefore, this portion of Southern Star's motion is denied as moot.[36]

**IT IS ACCORDINGLY ORDERED** that Souther Star's Motion to Exclude Testimony of William A. Henry (Doc. 45) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Landowners' Motions to Exclude Testimony of Bernie Shaner and Motions for a Ruling that K.S.A. § 26-513(b) Applies (Docs. 48 and 77) are **DENIED**.

**IT IS FURTHER ORDERED** that the Landowners' Motion to Determine Date of Taking, Date of Valuation, and to Determine the Surface Rights Taken (Doc. 47) is **GRANTED** in part and **DENIED AS MOOT** in part.

---

[34] Doc. 47.

[35] *Id.*

[36] Doc. 47.

**IT IS SO ORDERED.**

Dated this 22nd day of March, 2012, in Wichita, Kansas.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE